**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **NATHALY CORTEZ, individually and on behalf of similarly situated individuals** | § § § § | |
| **Plaintiffs** | § § | |
| **v.** | § § § | **CIVIL ACTION NO. 4:21-cv-03991** |
| **CASA DO BRASIL, LLC** | § § | |
| **Defendant** | § § § | |

<u>**PLAINTIFFS' MOTION TO AUTHORIZE NOTICE TO POTENTIAL PLAINTIFFS**</u>

TRANG Q. TRAN
Federal I.D: 20361
Texas Bar No. 00795787
2537 S. Gessner Suite 104
Houston, Texas 77063
Ph.: (713) 223 – 8855
trang@tranlf.com
service@tranlf.com

**ATTORNEY FOR PLAINTIFF, individually and on behalf of similarly situated individuals**

I.    PRELIMINARY STATEMENT ........................................................................5
II.   PROCEDURAL HISTORY ............................................................................6
III.  RELEVANT FACTS ......................................................................................7
IV.   ARGUMENT...............................................................................................13
    A.  Casa Do Brasil made deduction from cash tips for mistakes...........................13
    B.  Casa Do Brasil made edits to time records. ....................................................14
    C.  Can Customer Service Representatives take cash from the tip pool?................14
    1.      When can a manager or Supervisor Can Retain Tips .................................15
    2.      Is a Customer Service Representative a manager or supervisor under the FLSA? .......15
    D.  Failure to Give Proper Tip Notice ..................................................................17
    E.  Casa Do Brasil kept some of the tipped employees credit card tips...................17
    B.  Notice to Potential Plaintiffs is Appropriate on the Facts Presented ...............19
    C.  Notice Should Be Sent to Similarly Situated Employees .................................23
    D.  Defendant Should Be Directed to Supply Names and Contact Information to Facilitate Prompt and Effective Notice ........................................................................24
    E.  Plaintiff's Proposed Notice and Reminders Should Be Mailed, E-Mailed, Sent Via Text Message and Posted ........................................................................25
    1.      Email ...........................................................................................................26
    2.      Text Message ..............................................................................................28
    3.      Notice Reminder .........................................................................................29
    4.      Posting.........................................................................................................29
V.    EXPEDITED CONSIDERATION IS APPROPRIATE.................................30
VI.   RELIEF SOUGHT........................................................................................31

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

## <u>TABLE OF AUTHORITY</u>

**Cases**

*Chano v. City of Corpus Christi,* 2018 U.S. Dist. LEXIS 59449 (S.D. Tex. April 6, 2018) ........ 27

*Argo v. Precision Drilling Co., LP,* 2015 U.S. Dist. LEXIS 170949 (S.D. Tex. Dec. 23, 2015). 25

*Blake v. Hewlett-Packard Co.,* 2013 U.S. Dist. LEXIS 98690, at *10 (S.D. Tex. July 11, 2013) 31

*Bridgewater v. GES Gladiator Energy Servs. Texas, LLC,* 2015 U.S. Dist. LEXIS 192429, at *6 (W.D. Tex. Dec. 22, 2015) ............................................................................................ 31

*Broussard v. Stein Mart, Inc.,* 2017 U.S. Dist. LEXIS 218123 (S.D. Tex. Sept. 25, 2017) ......... 27

*Butler v. City of San Antonio*, 2003 WL 22097250, at * 1 (W.D.Tex. 2003) ............................... 21

*Campbell v. City of Los Angeles,* 903 F.3d 1090 (9th Cir. 2018) ............................................... 21

*Cervantez v. TDT Consulting, LLC*, 2019 U.S. Dist. LEXIS 142409 (N.D. Tex. Aug. 21, 2019)( ................................................................................................................................... 29

*Chhab v. Darden Restaurants, Inc.*, 11 Civ. 8345(NRB), 2013 WL 5308004 (S.D. N.Y. Sept. 20, 2013) ...................................................................................................................... 29

*Espinoza v. Stevens Tanker Div., LLC,* 2017 U.S. Dist. LEXIS 16823, at *4 (W.D. Tex. Feb. 7, 2017) .................................................................................................................... 30

Fair Labor Standards Act, 29 U.S.C. 201, *et seq* ......................................................................... 6

*Frank v. Gold'n Plump Poultry, Inc.,* No. 04–CV–1018, 2007 WL 2780504, at *4 (D.Minn.2007) ................................................................................................................ 20

*Gambino v. Harvard Protection Servs. LLC,* No. 10 Civ. 0983 (PAC), 2011 WL 102691 (S.D.N.Y. Jan. 11, 2011) .......................................................................................... 27

*Gronefeld v. Integrated Prod. Servs.,* 2016 U.S. Dist. LEXIS 192476, at *19 (W.D. Tex. April 26, 2016) ............................................................................................................. 29

*H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D.Tex.1999) ......................................... 22

*Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. (1989) ................................................... 18, 19, 21, 23,

*Deloitte & Touche, LLP,* 2012 U.S. Dist. LEXIS 12641, at *6 (S.D. NY Jan. 17, 2012) ........... 27

*Wells Fargo Wage & Hour Empl. Practices Litig.,* 2013 U.S. Dist. LEXIS 70040 (S.D. Tex. May 17, 2013) .................................................................................................................... 25

*Jaso v. Bulldog Connection Specialists LLC,* 2015 U.S. Dist. LEXIS 140778, at *17 (S.D. Tex. Oct. 15, 2015) ........................................................................................................ 27

*Jones v. JGC Dallas LLC,* No. 3:11-CV-2743-O, 2012 WL 6928101, at *3 (N.D.Tex.2012) .... 22

*Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 288 (N.D.Tex.2012) ............................................... 22

*Lee v. Metrocare Servs*., 980 F. Supp. 2d 754, 766 (N.D.Tex.2013) ......................................... 22

*Lopez v. Bird Elec. Enters.*, 2019 U.S. Dist. LEXIS 149028 (W.D. Tex. June 26, 2019)( .......... 29

*Loy v. Rehab Synergies, LLC,* 336 F. Supp. 3d 847, 852 (S.D. Tex. 2019) ................................ 23

*Lujan v. Cabana Mgmt., Inc.,* No. 10 Civ. 755(ILG), 2011 WL 3235628 (E.D.N.Y. July 27, 2011) .......................................................................................................................... 27

*Maxwell v. G.R.A.,* 2011 U.S. Dist. LEXIS 26977 (S.D. Tex. Mar. 16, 2011)( .......................... 25

*McKnight v. D. Houston, Inc.,* 2010 U.S. Dist. LEXIS 129634, at *3 (S.D. Tex. Dec. 8, 2010). 30

*Metcalfe v. Revention, Inc.,* 2011 U.S. Dist. LEXIS 83966 (S.D. Tex. Aug. 1, 2011) ................ 25

*Muhire v. Modani Houston LLC,* 2017 U.S. Dist. LEXIS 165147 (S.D. Tex. Mar. 16, 2017) .... 27

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......................................................... 24

3

*Qazi v. Stage Stores, Inc.,* 2019 U.S. Dist. LEXIS 102363 (S.D. Tex. June 18, 2019)............... 25

*Robbins v. Academy Ltd.*, 2019 U.S. Dist. LEXIS 149071, at *2-3 (S.D. Tex. Aug. 1, 2019)( ... 28

*Roberts v. S.B. S. Welding, L.L.C.,* 140 F. Supp.3d 601, 607–08 (N.D.Tex.2015) ..................... 22

*Roussell v. Brinker Intern., Inc*., No. H-05-3733, 2008 WL 2714079, (S.D. Tex. 2008) ...... 17, 20

*Roussell v. Brinker Int'l, Inc*., 441 F. App'x 222, 226–27 (5th Cir. 2011).................................... 20

*Salinas v. Wood Grp. PSN Commissioning Servs.,* 2017 U.S. Dist. LEXIS 211507 (S.D. Tex. Dec. 26, 2017)........................................................................................................................ 24

*Sanchez v. R&R Multi-Trade Constr. Servs., LLC*, 2018 U.S. Dist. LEXIS 198613 (E.D. Tex. Oct. 25, 2018)( ................................................................................................................... 29

*In re JPMorgan Chase & Co*., 916 F.3d 494, 498 (5th Cir. 2019)............................................. 20

*Swales v. KLLM Transp. Servs., L.L.C*., 2021 WL 98229 ................................................... 19, 20

*Transito v. Mahard Egg Farm, Inc.,* 2016 U.S. Dist. LEXIS 56453 (E.D. Tex. April 28, 2016) 30

*Turner v. Nine Energy Serv., LLC,* 2016 U.S. Dist. LEXIS 155640 (S.D. Tex. Oct. 4, 2016) .... 28

**Statutes**

29 U.S.C. § 216(b) ........................................................................................... 6, 18, 20, 30

**Rules**

Rule 23, Federal Rule of Civil Procedure 23 (c)(2)(B) ................................................. 24

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

Plaintiff, Nathaly Cortez on behalf of herself and all other similarly situated, current and former employees of Defendant Casa Do Brasil, LLC hereafter "Casa Do Brasil" or "Defendant" and opt-in plaintiffs files this Motion to Authorize Notice to Potential Plaintiffs and would show the Court as follows:

## I.  PRELIMINARY STATEMENT

Plaintiffs and other similarly situated employees were employed by Defendant, Casa Do Brasil and (referred to as "Defendant" or "Casa Do Brasil"), as Servers, Bartenders, and Gauchos (collectively referred to as "Tipped Employees") who worked at Defendant's College Station location. This lawsuit challenges Defendant's common policy of:

- requiring the Servers, Bartenders, and Gauchos ("Tipped Employees") to pay for comps, mis-orders, and walkouts;

- Participating in a tip pool with non-tipped employees (CSR);

- Not having proper tip notice; and

- Not paying the employees time and one half for all hours worked over forty (40) in a workweek.

At this stage, the merits of Plaintiffs' claims and Defendant's defenses are largely irrelevant as the Court considers Plaintiffs' request for Notice. An order conditionally certifying the proposed FLSA collective action does ***not*** require this Court to consider the Plaintiff's likelihood of success. This is particularly true at this early stage of the litigation before the parties have completed any non-class discovery.  Nor does conditional certification require this Court to decide whether the lawsuit will ultimately proceed to trial as a collective action. Rather, conditional certification merely triggers the process by which affected employees — whose FLSA limitation periods have not yet been tolled — may be informed of this lawsuit and are provided an opportunity to join. Because Plaintiff satisfies that the servers, bartenders, and Gauchos are similarly situated, the

Court should grant Plaintiffs' Motion for Notice and approve the immediate issuance of judicially-supervised notice to members of the proposed collective action, which is defined as follows:

> All Servers, Bartenders, and Gauchos employed by Casa Do Brasil at its College Station location within the last three (3) years prior to the filing of the Complaint.

Through this motion, Plaintiff seeks to take the first step in protecting the rights of the other Tipped Employees who have worked at Casa Do Brasil within the last three (3) years by sending them Court-approved notice of this action and letting them decide whether to seek unpaid wages under the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* ("FLSA")*.*  Plaintiff's submission far exceeds the requirements of the lenient standard applied by Courts at this stage that "typically results in conditional certification." *Sheffield v. Stewart Builders, Inc.,* 2019 U.S. Dist. LEXIS 188367, at *8 (S.D. Tex. Oct. 30, 2019). Through the allegations in the Complaint (ECF #1) and Defendant's Answer (ECF #7), and through Plaintiff's declaration, Plaintiff demonstrates that Defendant subjected all of their Servers, Bartenders, and Gauchos to the same unlawful compensation policies, and that other "similarly situated" Tipped Employees will benefit from Court-authorized notice pursuant to 29 U.S.C. § 216(b).

## II. PROCEDURAL HISTORY

Plaintiff filed this collective action pursuant to 29 U.S.C. §216(b) on December 7, 2021. (ECF #1). Plaintiff brings her FLSA claims individually and on behalf of other Servers, Bartenders, and Gauchos employed by Defendant in the last three (3) years. Plaintiff alleges that Defendant violated the FLSA by not paying her and other Servers, Bartenders, and Gauchos an overtime premium for all hours worked over forty (40) in a workweek.

On January 31, 2022, Defendant filed their Answer, generally denying the allegations asserted by Plaintiff. (ECF #7).

### III. RELEVANT FACTS

Casa Do Brasil is a Brazilian Steakhouse with two (2) Texas Restaurants. (ECF #7, ¶ 21). Defendant employ Servers, Bartenders, and Gauchos. (ECF #2, ¶22). Plaintiff and the Tipped Employees share the same primary job duties including taking orders, serving drinks and cutting meat at the tables. *Id.*

Plaintiff worked for Defendant out of their College Station, Texas restaurant from approximately June 2019 until October 2019, and again from November 2020 until April 2021. (ECF #7, ¶ 23; ***See* Exhibit 1** Nathaly Cortez Declaration ¶ 2).  Plaintiff worked at the Casa do Brasil location at 1665 Greens Prairie Rd, College Station, TX 77845. (ECF #7, ¶ 21).  Plaintiff's hours varied from week to week, but she regularly worked more than forty (40) hours a workweek, including some weeks in which she worked over sixty (60) hours.  (***See* Exhibit 1** Cortez Dec. ¶ 9). Defendant edited Plaintiff's time records. (Ex. 1D – Cortez Time Edit Logs) As a result of the time edits, Plaintiff had less overtime. (***See* Exhibit 1** Cortez Dec. ¶¶ 14).

1. **Casa do Brasil paid Tipped Employees an hourly rate of less than minimum wage and applied a tip credit**

Defendant admits that employees were being compensated by an hourly rate less than minimum wage and justified it by claiming their inclusion of tip credit.  See ECF No. 7 ¶24, 30, 31, 38, 49, 51.   Casa Do Brasil paid the servers and bartenders an hourly rate that is less than minimum wage plus tips. ***See* Exhibit 1** Cortez Dec. ¶¶10; **Exhibit 2** Mario Candiani Declaration ¶ 3; **Exhibit 3** Joseph Felan Declaration ¶ 4.

Mr. Cameron Rogneby (Customer Service Representative at Defendant's College Station location) testified that servers were compensated at an hourly rate during their training period and once they had graduated the training period, they were compensated through tip credit. Mr. Rogneby also testified that gauchos, bartenders, and waiters were all compensated through a

7

combination of tips and an hourly rate. *See* **Exhibit 5** Cameron Rogneby Dep. 19:6-18, 20:4-12.

Mr. Jarbas Gottardo (General Manager of Defendant's College Station location) testified that

Plaintiff was paid an hourly rate of $2.13 and tip credit. ***See*** **Exhibit 6** Jarbas Gottardo Dep. 132:4-

17. Defendant admits that Plaintiff and the "Tipped Employees" (as defined in Paragraph 4 of

Plaintiff's Complaint) were paid utilizing the tip credit provisions authorized by the FLSA. (ECF

#7, ¶ 57).    See Exhibit 7 Defendant First Amended Responses to Plaintiff's First Amended

Discovery Requests p. 9, 11, and 41.

> **2.  Casa Do Brasil required these Tipped Employees and CSRs to participate in a tip pool.**

A Tip Pool was in place for Tipped Employees and Customer Service Representatives. **See**

**Exhibit 1** Cortez Dec. ¶ 23; **Exhibit 1E** – Cortez Tip Pooling Agreement; **Exhibit 2** Candiani

Dec. ¶ 11; **Exhibit 3** Felan Dec. ¶ 5; **Exhibit 7** Defendant's First Amended Responses to Plaintiff's

First Amended Discovery p. 51; **Exhibits 9 – 11** – Tip Pooling Agreements.

Mr. Rogneby testified that CSRs participated in the tip pool alongside waiters, bartenders,

and gauchos. **See Exhibit 5** Rogneby Dep. 22:7-15, 21:1-4, 27:6-8, 16-23.

Mr. Gottardo testified that it was mandatory for waiters, bartenders, and gauchos to

participate in the tip pool that included CSRs. *See* **Exhibit 6** Gottardo Dep. 76:7-12 He also

testified that software was used to pool all the tips recorded in their POS and redistributed them

amongst servers, gauchos, bartenders, and CSRs. **See Exhibit 6** Gottardo Dep. 37:2-21, 48:25-

49:1-9, 50:9-16, 75: 15-19, 99: 7-17. Mr. Gottardo also testified that CSRs participated in the tip

pool from the opening of the restaurant to the current day. ***See*** **Exhibit 6** Gottardo Dep. 98: 15-18.

> **3.  Casa Do Brasil made deductions from the tip pool for mistakes made by the tipped employees.**

Defendant admits that, on a very limited number of occasions, deductions were taken from

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

the cash tips prior to distribution of the cash tips to those participating in the tip pool during the shift at issue at Defendant's restaurant in College Station, Texas. See ECF No. 7 ¶ 6, 26, and 52 and **Exhibit 7**, Defendant's First Amended Discovery Responses, p. 10-11, **Exhibit 1** Cortez Dec. ¶ 18-22; **Exhibit 2** Candiani Dec. ¶ 5; **Exhibit 3** Felan Dec. ¶ 10

### 4.    Casa Do Brasil made to edits the time records.

*See* **Exhibit 1** Cortez Dec. ¶ 14-16; Exhibit 1D – Cortez Time Edit Logs; *See* **Exhibit 2** Candiani Dec. ¶ 12.    Mr. Gottardo testified that as a manager, he has changed time entered by waiters, bartenders, and gauchos without documenting the reason. Although he testified that "most of the time" he received permission from the employee before altering their time, that it would be verbal and that no records of employee approval exist. *See* **Exhibit 6** Gottardo Dep. 99: 24-25, 100:1-5, 21-25.    Although Mr. Gottardo testified that some of the time deductions shown on Exhibit 1D were for meal breaks or a rest break, Plaintiff never took a break. *See* **Exhibit 6** Gottardo Dep. 121:10-13, and *See* **Exhibit 1** Cortez Dec. ¶ 16. Since Casa Do Brasil edited the time records, this sometimes resulted in less overtime. *See* **Exhibit 1** Cortez Dec. ¶14; **Exhibit 1D** – Cortez Time Edit Logs. Defendant's CSRs and Managers shaved off time worked by Cortez. The time shaved ranged from 6 minutes to over 2 hours at times. Cortez did not request or permit CSRs or managers to alter her timecards. Per the Employee Handbook, "If the time card is not punched for any reason, or if the time recorded on the time card is not correct, the correct time must be written in and signed by yourself and a member of management." **See Exhibit 22**. Plaintiff never signed any documents allowing Defendant to make any of the time edits shown in Exhibit 1D. Further, CSR Regis Cerutti was given management access to review and edit Plaintiffs' time records. **See Exhibit 1D** Cortez Time Edit Logs, p. 4.

### 5.    The CSRs pay stubs were altered to disguise that they were really paid salaries.

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

A review of the pay summary for the sample CSR shows that they were paid approximately the same amount each week. *See* **Exhibit 19** Regis Cerutti Pay Stubs; **Exhibit 19**A Regis Cerutti Pay Summary; **Exhibit 20** Jocemar Suzin Pay Stubs **Exhibit 20A** Jocemar Suzin Pay Summary; **Exhibit 21** Cameron Rogneby Pay Stubs; **Exhibit 21A** Cameron Rogneby Pay Summary; and **Exhibit 6** Gottardo Dep. 136:18-20

The Pay Stub Summary for Regis Cerutti shows he was paid a salary of about $3,350.00 for every pay period from October 25, 2019 – July 17, 2020, with the exception of one week, regardless of how many hours he worked, ranging anywhere from 59.71 hours to 111 hours. *See* **Exhibits** 19 and 19 B.

The Pay Stub Summary for Jocemar Suzin shows he was paid a salary of about $2,700.00 for every pay period from January 3, 2020 – May 7, 2020, with the exception of one week, regardless of how many hours he worked, ranging anywhere from 61.75 hours to 130 hours. *See* **Exhibits** 20 and 20 B.

The Pay Stub Summary for Cameron Rogneby shows he was paid a salary of about $2,400.00 for every pay period from March 12, 2021 – October 21, 2021, regardless of how many hours he worked, ranging anywhere from about 80 hours to over 112 hours. *See* **Exhibits** 21 and 21 B.

Although the CSRs were being paid their hourly rate, credit card tips, and cash tips, the "Mics. Earnings" was how Defendant disguised the payment and brought the CSR up to their promised salary. Mr. Gottardo testified that "miscellaneous earnings" for CSRs were an "extra" payment, but later testified that Defendant paid "not just CSRs but servers, also...would [be paid] miscellaneous earnings, you know, because we guarantee then this amount of money to the payor." *See* **Exhibit 6** Gottardo Dep. 61:21-23; 63:5-10.

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

**6.  CSRs had the right to recommend the hiring or firing of other employees**

The CSRs were able to make recommendations for a new hire based on interviewing and testing the Tipped Employees during training.   *See* **Exhibit 1** Cortez Dec. ¶ 34, and 35. *See* **Exhibit 1** Cortez Dec. ¶ 34; **Exhibit 2** Candiani Dec.; **Exhibit 5** Rogneby Dep. 17:22-25, 18:1-2; 18:8-13. Mr. Gottardo testified that CSRs are required to certify staff as having completed the training necessary to begin their work as servers**.** *See* **Exhibit 6** Gottardo Dep. **91:7-10 and Exhibit 1** Cortez Dec. ¶ 35, *See* **Exhibit 2** Candiani Dec. 8.

**7.  CSRs managed the restaurant**

CSRs were assigned to manage areas of the restaurant and would be the sole supervisor after the manager left for the day. *See* **Exhibit 1** Cortez Dec. ¶ 32-33; **Exhibit 2** Candiani Dec. 7; **Exhibit 3** Felan Dec. ¶ 21. Mr. Rogneby testified that as a CSR he would be asked to take care of customer issues if a table had a problem and report back to management to resolve said issues. **See Exhibit 5 Rogneby Dep. 16:11-25, 17:1-4**

**8.  The CSR regularly directs the work of at least two employees;**

Since the CSRs were assigned to supervise and manage areas of the restaurant, they were in charge of directing multiple servers, bartenders, and Gauchos at a time. *See* **Exhibit 1** Cortez Dec. ¶ 32; **Exhibit 2** Candiani Dec. ¶ 9; **Exhibit 3** Felan Dec. ¶ 22

**9.  Casa Do Brasil allowed the CSR to retain tips from customers who they did not <u>directly and solely</u> service.**

CSRs received tips from customers they did not directly and solely provide services to. *See* **Exhibit 1** Cortez Dec. ¶ 46; **Exhibit 2** Candiani Dec. ¶ 11, **Exhibit 3** Felan Dec. ¶ 23. Mr. Rogneby testified that CSRs were included in the tip pool and received a share of tips left by guests to other tipped employees and that the CSRs did not tend to. *See* **Exhibit 5** Rogneby Dep. 22:10-25.  Mr. Gottardo testified that through the inclusion of CSRs in the tip pool, CSRs received tips from

11

customers they did not serve during their shifts. ***See* Exhibit 6** Gottardo Dep. 53: 17-20, 99: 7-17

### 10. CSR Wore Manager Uniforms

The CSRs wore the same uniform as the managers. The Tipped Employees wore gray shirts and vests, but the CSRs and managers wore blue shirts. ***See* Exhibit 1** Cortez Dec. ¶ 30; **Exhibit 3** Felan Dec. ¶ 20

### 11. CSR and had different job duties than bartenders, servers, and gauchos.

The job duties of a CSR included closing the restaurant, closing out servers and bartenders, making comps or voids, inventory, running meetings, and other managerial duties. ***See* Exhibit 1** Cortez Dec. ¶ 29, 31, and 42; **Exhibit 2** Candiani Dec. ¶8; **Exhibit 3** Felan Dec. ¶17 Additionally, Mr. Gottardo testified that the CSR job description included:

      a.  running staff briefings;
      b.  receiving updates from management and relaying them to service staff;
      c.  direct coworker concerns;
      d.  Keep records of customer interactions;
      e.  Take inventory of supplies;
      f.  Place and receive orders of supplies;
      g.  Train staff during department meetings.

***See* Exhibit 6** Gottardo Dep. 84:19-25, 85:1-2, 88: 2-6; 89: 15-25, 90: 1-13, 19-25; 91: 1-2.

### 12. CSRs had Management Experience

When Casa Do Brasil hired certain individuals for CSR, they had previous management positions. ***See* Exhibit** 17 Employee Applications for Jocemar Suzin Mr. Gottardo testified that CSRs were required to have 2 years of management or customer service upon hiring. ***See* Exhibit 6** Gottardo Dep.77:3-7 This is supported by the job description for Customer Service Representative. ***See* Exhibit** 4.

### 13. Defendant has CSRs listed as Managers

Defendant's Server's Training manual list 2 CSRs as managers, Cameron [Rogenby], and

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

Jocemar [Suzin]. *See* **Exhibi**t 16 p.

**14. Casa's tip notice failed to meet the FLSA's standard**

Mr. Gottardo testified that the Tip Pooling Agreement [Exhibit 1G] had only been in place since July 2021 and that previous to that new employees only received a verbal explanation when they were interviewed or hired. *See* Exhibit 6 Gottardo Dep. 75:1-7, 76: 3-6.

The language in the Tip Pooling Agreements, attached as Exhibit 1G and 1E do not comply with the FLSA section. *See* **Exhibit 1E** Notice to Tipped Employees; **Exhibit 1D** Cortez Tip Pooling Agreement; **Exhibits 9 – 1**1 Tip Pooling Agreements; and **Exhibit 1** Cortez Dec. ¶ 39

Even though Jocemar Suzin and Aliahad Momin worked at Casa Do Brasil for a few years prior, they each signed a Tip Pooling Agreement, Notice to Tipped Employees, and Tip Reporting Acknowledgments on February 4, 2022. (***See*** **Exhibits** 10 – 15) Defendant replaced the Tip Pooling Agreement (***See*** **Exhibit** 1E) with a new Tip-Pooling Agreement (***See*** **Exhibits** 1G, 10, and 11) after this lawsuit was filed.

**15. No Tip Notice Posters**

There were no posters or signs at the College Station restaurant during the relevant time period that described how the tipped employees would be paid. *See* **Exhibit 1** Cortez Dec. ¶ 48; **Exhibit 2** Candiani Dec. 14

## IV.    ARGUMENT

**A.    Casa Do Brasil made deductions from cash tips for mistakes.**

Whenever the tipped employees make a mistake that resulted in the restaurant losing money on a table, Casa Do Brasil would deduct the expense from the pooled cash tips. This happened when a customer left without paying their tab, or if a Tipped Employee mistakenly

entered the wrong item, or to the wrong table. See Exhibit 1 Cortez Dec. ¶ 18-22; Exhibit 2

Candiani Dec. ¶ 5, Exhibit 3 Felan Dec. ¶ 10

### B.    Casa Do Brasil made edits to time records.

There is no question that Casa Do Brasil made edits to the time records of the employees.

In the weeks the plaintiffs worked over 40 hours a week, any time edits that reduces the number

of overtime hours would result in an FLSA violation.

### C.    Can Customer Service Representatives take cash from the tip pool?

On September 24, 2021,[1] the Department of Labor published its most recent rule regarding

tip regulations under the Fair Labor Standards Act ("FLSA"). This final rule went into effect on

November 23, 2021. Id  Generally, the FLSA requires covered employers to pay their employees

at least the federal minimum wage of $7.25 per hour. However, employers of tipped employees

may satisfy a part of the required minimum wage payment through a "tip credit." While employers

must pay at least $2.13 in direct wages, a tip credit is a partial credit towards the minimum wage

for a tipped employee based on the tips that the employee receives. This credit can only be taken

by the employer if certain requirements are met, including that the employee retains all the tips

they receive (although employers are permitted to require tipped employees to participate in

mandatory tip pools wherein tips are shared entirely or partially by employees). Employers are not

permitted to keep employees' tips for any reason. This prohibition also extends to the employer's

managers and supervisors. The DOL revised § 531.52 to state that FLSA section 3(m)(2)(B)

"prohibits employers from requiring employees to share tips with managers and supervisors," and

---

1 https://www.dol.gov/agencies/whd/flsa/tips https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

revises § 531.54 to state that employers who do not take a tip credit "may not include supervisors and managers" in a tip pool. https://www.federalregister.gov/d/2020-28555/p-72

1. **When can a manager or Supervisor Can Retain Tips**

The new final rule makes clear that while managers and supervisors are prohibited from retaining tips earned by other employees, **they are permitted to retain tips that they received directly from customers based on the service that the manager or supervisor *directly and solely* provide**d. This is a clarification meant to prevent managers and supervisors from keeping tips that were earned, at least partly, by other employees. Therefore, managers are prohibited from receiving tips distributed from a mandatory tip pool or other tip-sharing arrangements. Under the new final rule, the Customer Service Representatives at Casa Do Brasil would be able to retain the tips he received from customers that he alone served. The manager could contribute these tips to the restaurant's tip pool. However, under no circumstances could the manager receive a distribution from this tip pool. The CSR performed many supervisory duties and held themselves out as managers.

2. **Is a Customer Service Representative a manager or supervisor under the FLSA?**

The determination of whether or not a Customer Service Representative is a manager or supervisor or is a tipped employee is a merit-based issue that should not be ruled on by the court until opt-in plaintiffs have joined the case and discovery has been conducted. **On the one hand, the plaintiffs will argue that the CSR held managerial duties and should not be able to take money from the tip pool. On the other hand, Casa Do Brasil will argue that the** supervisors /CSR performed tip-generating services. Under DOL regulations, a manager or supervisor is anyone: (1) whose primary duty is the management of the entire enterprise or of its customarily recognized subdivision or department;  (2) who customarily and regularly directs the work of at least two

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

employees; and (3) who has the right to hire or fire other employees, or whose suggestions and recommendations regarding the hiring or firing of employees are given particular weight.

The records show that the CSR wore the same blue shirt uniform reserved for managers, was able to access the manager's office, access pay records that only a manager can do, and perform management duties.

Under the DOL Rules, a manager or supervisor could be any individual who owns at least a bona fide 20 percent equity interest in the enterprise for which they are employed and who is actively engaged in the entity's management. The limited discovery permitted for the notice state does not allow the deposition of the owners of the restaurant or the ownership records of the company. This factor is a merit-based argument to be addressed later and inappropriate at this state.

When facing this issue, this Court stated that:
Neither the language of FLSA nor the relevant regulations provide much clear guidance regarding which employees or occupations may participate in mandatory tip pools or tip sharing arrangements. Legislative history and the Department of Labor Field Operation Handbook provide some additional guidance, setting forth examples of the kinds of employees that may be included in a mandatory tip pool. In a report on the 1974 amendments to Section 203(m), the Senate Committee on Labor and Public Welfare explained: Nor is the requirement that the tipped employee retain such employee's own tips intended to discourage the practice of pooling, splitting, or sharing tips with employees who customarily and regularly receive tips—e.g., waiters, bellhops, waitresses, countermen, busboys, service bartenders, etc. On the other hand, the employer will lose the benefit of this exception if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips—e.g., janitors, dishwashers, chefs, laundry room attendants, etc. S. Rep. 93-690, at 43 (Feb. 22, 1974). The Department of Labor Field Operations Handbook echoes the Senate Report, stating that the following occupations have been recognized as eligible for participation in a tip splitting or pooling arrangement: "1) waiters/waitresses; 2) bellhops; 3) counter personnel who serve customers; 4) busboys/girls (server helpers); 5) service bartenders." Dept. Labor Field Operations Handbook § 30d04(a). The Field Operations Handbook likewise adds that tipped employees may not be required to share tips "with employees who have not customarily and regularly participated in tip pooling arrangements," noting that the following "employee occupations" would not be eligible to participate: "1) Janitors; 2) Dishwashers; 3) Chefs or cooks; 4) Laundry room attendants." Id. § 30d04(c). Neither the

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

Senate Report nor the Department of Labor Handbook attempts to explain the commonalities between each group of employees.

*Roussell v. Brinker Intern., Inc*., No. H-05-3733, 2008 WL 2714079, at *6–7 (S.D. Tex. 2008).

This court has not recognized managers or supervisors like the CSR in this case as tipped employees.

### D.    Failure to Give Proper Tip Notice

When an employer elects to take a tip credit under the FLSA, it must inform tipped employees of its use of the tip credit, including (1) the amount of the employee's cash wage; (2) the amount of the tip credit claimed by the employer; (3) that the amount claimed may not exceed the value of the tips actually received; (4) that all tips received must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; and (5) that the tip credit shall not apply to any employee who has not been informed of all of these requirements. 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b). An employer may not take the tip credit for any period of time during which these notice requirements are unmet. Casa's Tipped Pooling Agreement and Notice to Tip Employees, and Tip Reporting Acknowledgments do not comply with the requirement of the FLSA. (Exhibits 1E-1H; 9-15)

### E.  Casa Do Brasil kept some of the tipped employees' credit card tips

A review of Plaintiff Cortez's limited collection of credit card tip records shows that the defendant shorted her on her credit card tips on her paychecks. Exhibits 1A and 1B have a report of daily "Non-Cash Share" earned. There is a discrepancy between the two records, and Plaintiff's paystub shows "Credit Tips" earned to be the lesser amount, totaled from Exhibit 1B.

The question of whether or not Casa Do Brasil withheld credit card tips from the plaintiffs and other tipped employees will be addressed in discovery and will affect all Tipped Employees. Casa Do Brasil may argue that it paid extra money to each tipped employee in the form of

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

"miscellaneous" payments but with the pending question, it has not established that these payments were not coming from funds that were improperly withheld from the Tipped Employees or if the amount fully compensate the employees for their withheld credit card tips.

### III. REQUEST FOR § 216 (b) NOTICE TO POTENTIAL PLAINTIFF

**A. Legal Standard: The District Court Is Authorized To Issue Notice To The Proposed Class And Should Do So Immediately**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). According to the Supreme Court: 'Congress has stated its policy that [ADEA] plaintiffs should have the ability to proceed collectively.…The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same [discriminatory] activity.' *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). As the Supreme Court: "[after the enactment of the Portal-to-Portal Act]…Congress left intact the "similarly situated" language providing for collective actions, such as this one. The broad remedial goal of the statute should be enforced to the full extent of its terms. *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. at 173.

The trial court's notice-giving role is pivotal to advancing the goals and evading the dangers of collective actions. An employee cannot benefit from a collective action without "accurate and timely notice," as the Supreme Court put it in *Hoffmann-La Roche, Inc. v. Sperling*. While the Supreme Court has institutionalized the Court's discretionary role in the notice process, it specifically did not delve into the details of the exercise of its discretion. Therefore, the Court must be guided by other precedents in determining how to exercise its discretion as to whether notice to putative class members should proceed. *See Hoffman-La Roche, Inc.,* 493 U.S. at 169. Court-authorized notice protects against "misleading communications" by the parties, resolves the

18

parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures the joinder of additional parties is accomplished properly and efficiently, and expedites the resolution of the dispute. *Hoffman-La Roche*, 493 US. at 170-172.

As the Fifth Circuit held in *Swales v. KLLM Transport Services, LLC,* the trial court is mandated to 'rigorously scrutinize the realm of "similarly situated" workers, and must do so from the outset of the case.' *Swales v. KLLM Transp. Servs., L.L.C.*, 2021 WL 98229, at *2. In *Swales,* the Fifth Circuit specifically addressed the factual situation currently before the Court, stating: "For example, in a donning and doffing case, notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations. In those types of cases, the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job." *Swales,* 2021 WL 98229, at *7. While the potential group of plaintiffs might have different job descriptions, in this case, they were all tipped employees working side by side in the same restaurant who were subjected to the same pay practices: Casa Do Brasil did not give proper tip notice; Casa Do Brasil deducted tips for mistakes and walkouts; Casa Do Brasil paid these individuals an hourly rate of less than minimum wage and applied a tip credit; Casa Do Brasil required these individuals to participate in a cash tip pool; Casa Do Brasil withheld some of the credit card tips; Casa Do Brasil allowed the CSR to withdraw money from the tip pool; the CSR are not tipped employees; Casa Do Brasil made edits the time records;  the plaintiffs work worked more than 40 hours per week and did not get paid time-and-a-half for all hours they worked over 40.

**B.  Notice to Potential Plaintiffs is Appropriate on the Facts Presented**

In order to demonstrate that notice to potential Plaintiffs is warranted, a plaintiff must make a showing that there are aggrieved individuals who are similarly situated to the plaintiff in relevant

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

respects given the claims asserted. 29 U.S.C. §216(b); *Swales* 2021 WL 98229, at 1; *In re JPMorgan Chase & Co.*, 916 F.3d 494, 498 (5th Cir. 2019). While the Fifth Circuit discarded the *Lusardi* rubric for 'conditional certification' it did nothing to either define the meaning of the term 'similarly situated' or overrule prior precedents which attempted to define the term 'similarly situated.' To be sure, nothing in *Swales* does anything which purports to limit the 'broad remedial goal of the statute' which is mandated to 'be enforced to the full extent of its terms.' *Hoffman-La Roche, supra.*

While there is little Fifth Circuit guidance on the definition of the term 'similarly situated,' in the context presented, it has written on the issue. For example, in *Roussell v. Brinker International, Inc.,* the court affirmed the collective treatment of a group of individuals victimized by a tip-pool violation. There, the Fifth Circuit observed: "If one zooms in close enough on anything, differences will abound; ... [b]ut plaintiffs' claims need to be considered at a higher level of abstraction." *Frank v. Gold'n Plump Poultry, Inc.,* No. 04–CV–1018, 2007 WL 2780504, at *4 (D.Minn.2007). There is need for care in evaluating distinctions among employees, but those distinctions must make a difference relevant to the legal issues presented. *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226–27 (5th Cir. 2011)."

In *Roussell,* the Fifth Circuit affirmed the public policy of allowing collective actions under 29 U.S.C.§216(b) stating: "Section 216(b) collective actions are intended "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Sandoz*, 553 F.3d at 919 (quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir.2003))." Of particular importance is the procedural posture of *Rounsell.* This case was an appeal of a trial of 55 individuals who survived decertification. So, the 'conditional certification' distinction was irrelevant to the *Roussell* court's

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

application of the "similarly situated" analysis. It specifically held that the trial court's application of its factors was not an abuse of discretion.

In *Campbell v. City of Los Angeles,* 903 F.3d 1090 (9th Cir. 2018), a case cited in *Swales,* the Ninth Circuit similarly rejected the *Lusardi* analysis because it fails to adequately address the "similarly situated" standard by operating "at such a high level of abstraction that it risks losing sight of the statute underlying it." 903 F.3d 1090, 1114 (9th Cir. 2018), However, to assist courts in collectively certifying cases, *Campbell* attempted to define the contours of the "similarly situated" requirement, stating:

> The natural answer to the proper inquiry — what "similarly situated" means — is, in light of the collective action's reason for being within the FLSA, that party plaintiffs must be alike with regard to some *material* aspect of their litigation. That is, the FLSA requires similarity of the kind that "allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche,* 493 U.S. at 170, 110 S.Ct. 482; *see also Halle,* 842 F.3d at 223-24. That goal is only achieved — and, therefore, a collective can only be maintained — to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims. *See Halle,* 842 F.3d at 226. If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id*.

The holding in *Campbell,* and by implication *Swales*, is that the putative class members must be bound together by a common pay practice that affects a group of workers performing similar tasks (i.e. non-exempt work). Nothing in *Swales* alters this standard.

Prior to *Swales,* courts looked to the similarity of job requirements and pay provisions and at whether the putative class members appear to be possible victims of a common policy or plan. See: *Butler v. City of San Antonio*, 2003 WL 22097250, at * 1 (W.D.Tex. 2003). Courts considered whether potential Plaintiffs were identified, whether affidavits of potential Plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted. See *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex.1999). See also: *Jones v. JGC Dallas LLC*,

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

No. 3:11-CV-2743-O, 2012 WL 6928101, at *3 (N.D.Tex.2012), report and recommendation adopted, No. 3:11-CV-2743-O, 2013 WL 271665 (N.D. Tex.2013).

Prior decisions have ruled that to be similarly situated, each class member's situation need not be identical, but merely similar. *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 288 (N.D.Tex.2012). "[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices. *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 766 (N.D.Tex.2013).  The fact that there are servers, bartenders, and Gaucho tipped workers seeking collective treatment, in this case, does not prevent certification. It is sufficient that "they were compensated under the same regimen" allegedly "infected by discrimination," even if "their duties may have differed." *Roberts v. S.B. S. Welding, L.L.C.,* 140 F. Supp. 3d 601, 607–08 (N.D.Tex.2015); See also: *Aguilar v. Complete Landsculpture, Inc.*, No. 04–CV–0776, 2004 WL 2293842, at *4 (N.D. Tex.2004) (finding that foremen and laborers in landscape architecture business were similarly situated for the purpose of conditional certification under FLSA despite differences in pay and job responsibilities). If Casa Do Brasil made illegal tip deductions for mistakes, CSR tip-outs, or simply kept credit card tips then the employees are similarly situated.

There is no language in *Swales* that defines or sets parameters upon the determination of the issue of whether employees are 'similarly situated.' Consequently, none of the decisions cited herein regarding how 'similarly situated' is determined are affected in any way by *Swales.* Given the record before the Court as presented by the declarations presented, Plaintiffs have met the standard of showing that notice to potential Plaintiffs is appropriate. The declarations submitted with this Motion show that the potential Plaintiffs were all required to don/doff their PPE off the clock – regardless of whether they were hourly production or hourly maintenance employees.

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

### C. Notice Should Be Sent to Similarly Situated Employees

In furtherance of the FLSA's broad remedial purpose, courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings. *Hoffman-La Roche*, 493 U.S. at 170-72; *See also See Loy v. Rehab Synergies, LLC,* 336 F. Supp. 3d 847, 852 (S.D. Tex. 2019). Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by pooling resources," and enable the "efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche*, 493 U.S. at 170; *Baucum v. Marathon Oil Corp.,* 2017 U.S. Dist. LEXIS 109390, at *5 (S.D. Tex. July 14, 2017). In FLSA collective actions, courts have broad discretion to grant certification and broad authority over notice in order to prevent the misuse of such actions. *See Loy,* 336 F. Supp. 3d at 852.

Plaintiff's proposed FLSA collective action notice, attached as Exhibit 22, meets the criteria for collective action wage cases. *Hoffman-La Roche*, 493 U.S. at 170 (explaining that similarly situated employees should receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."). Accordingly, Plaintiff moves the Court to conditionally certify this action as an FLSA collective action and approve the proposed notice to all Servers, Bartenders, and Gauchos employed by Defendant within the last three (3) years.

Notice should issue promptly in this case given the collective of workers it serves to notify. The workers in the putative collective are not high-wage earners. Many live paycheck to paycheck. Contact information such as addresses, and phone numbers often change due to an inability to pay rent and phone bills if work is interrupted. Given that mail and phone forwarding services expire, it is particularly important in this case that a notice be issued as soon as practicable to provide effective notice of the opportunity to join the action. Further delay is likely to deny many similarly

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

situated workers the opportunity to join the action.

**D.    Defendant Should Be Directed to Supply Names and Contact Information to Facilitate Prompt and Effective Notice**

Defendant should be directed to provide names, addresses, email addresses, telephone numbers, and any employee number or unique identifier of the Tipped Employees in an electronic format to facilitate notice.  In the analogous context of Rule 23, Federal Rule of Civil Procedure 23(c)(2)(B) provides that "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  While the Rule 23 standard is not directly applicable to collective actions, the principle of notice being "the best practicable" makes logical sense. As Defendant has the contact information for their current and former employees, the Court should order Defendant to provide the information for sending notice. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).  The Supreme Court has directed that defendants should provide names and addresses of Tipped Employees in collective action cases. *Hoffmann-La Roche*, 493 U.S. at 171.

The names, addresses, emails, and telephone numbers should be supplied promptly in a manipulable or importable electronic format such as Excel, so that notice is most easily accomplished.  This information is routinely ordered to be produced in FLSA collective actions to facilitate notice. *See, e.g., Salinas v. Wood Grp. PSN Commissioning Servs.,* 2017 U.S. Dist. LEXIS 211507 (S.D. Tex. Dec. 26, 2017)(defendant ordered to produce last known addresses, email addresses, and phone numbers).

Plaintiff also requests that Defendant be ordered to supply the dates of birth and last four digits of social security numbers for anyone whose notice is returned as undeliverable to enable skip tracing of those individuals.  The last four digits of the social security numbers and dates of birth will assist with location efforts or a skip trace to find the current address for those individuals

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

whose notice is returned as undeliverable so that notice can then be re-mailed. Where the information is produced, it will only be used to assist in "skip tracing", *i.e.*, to find out if the John Smith who used to live in Baytown is now the John Smith in Corpus Christi, or Galveston, using standard "skip trace" databases to which counsel has access. *See e.g. Qazi v. Stage Stores, Inc.,* 2019 U.S. Dist. LEXIS 102363 (S.D. Tex. June 18, 2019)(defendant ordered to produce last known mailing addresses, last known home and cell phone numbers, last known email addresses, social security numbers, and work locations); *Argo v. Precision Drilling Co., LP,* 2015 U.S. Dist. LEXIS 170949 (S.D. Tex. Dec. 23, 2015)(defendant "ordered to produce the last four digits of the Social Security Number of each putative class member whose notice is returned as undeliverable"); *In re: Wells Fargo Wage & Hour Empl. Practices Litig.,* 2013 U.S. Dist. LEXIS 70040 (S.D. Tex. May 17, 2013)(defendant "ordered to produce the last four digits of the Social Security Number of each putative class member whose notice is returned as undeliverable"); *Metcalfe v. Revention, Inc.,* 2011 U.S. Dist. LEXIS 83966 (S.D. Tex. Aug. 1, 2011)(defendant ordered to produce social security numbers of potential class members for "skip tracing" purposes; *Maxwell v. G.R.A.,* 2011 U.S. Dist. LEXIS 26977 (S.D. Tex. Mar. 16, 2011)(defendant ordered to produce social security numbers of potential class members for "skip tracing" purposes.

Although dates of birth and partial social security numbers need not be produced initially, the Court should order them to be produced for any undelivered notices at this juncture. Given the short window for responding to the notice, if Plaintiff was required to wait for the undeliverable notices to be returned, then move for the additional information, or negotiate with Defendant for it, precious days or weeks would be lost, resulting in Tipped Employees having inadequate time to respond to the notice.

### E.     Plaintiff's Proposed Notice and Reminders Should Be Mailed, E-Mailed, Sent Via Text Message, and Posted

Plaintiff moves the Court to authorize dissemination of the notice by: 1) sending the form of notice, by mail to the Tipped Employees' last known addresses, with permission to re-mail if the notice is returned as undeliverable; 2) sending the notice by e-mail, using the form attached as Exhibit 23, to workers for whom Defendant can provide e-mail addresses; 3) sending notice by text messages, using the content in attached as Exhibit 24; 4) sending the Notice Reminder via Text and E-Mail before the end of the opt-in period to Tipped Employees who have not responded after the mailing of the initial notice; and 5) due to the transient nature of the Tipped Employees, authorize Plaintiff to make reminder calls shortly before the end of the opt-in period to Tipped Employees who have not responded after the mailing of the initial notice. The Court should also authorize the proposed notice to be translated to Spanish for distribution in Spanish and English to Tipped Employees with Spanish surnames. Lastly, the Court should also authorize Plaintiff's request to post the notice on the employee notice board or alternatively, in a prominent location within the employer's restaurant by the POS terminals, where current Tipped Employees can see it.

### 1. Email

Mailing of notice is the routine method for delivering notice. However, this means is not foolproof, particularly with a collective period extending over many years. Mailed notice may not reach every collective member for a wide variety of reasons. First, workers move and forwarding addresses are often not provided to the post office (and forwarding orders only last a year even when they are filled out). Yet, here, notice extends back three years, which is already far longer than forwarding orders last. Second, some workers may not be home during the notice period (away on work assignments, traveling, military service, etc.). Third, important mail is hard to distinguish from junk mail and many notices are simply thrown out without ever being opened.

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

Fourth, mail intended for collective members may be inadvertently misplaced or discarded by others who bring the mail in, such as kids or others living at the same address.  Fifth, mail can be mis-delivered.  Mail notice is an important component of the "best practicable notice," but it is hardly without fail, and there is no reason to limit delivery to a single means.  In this age of ubiquitous electronic communication, dissemination of notice through e-mail is an important adjunct to a comprehensive notice delivery scheme:

> In the present age, however, communication through email is the norm, and the Court does not view the disclosure of email addresses to class counsel as being unduly intrusive on the privacy and personal interests of class members. *See Pippins v. KPMG LLP*, No. 11 Civ. 377(CM)(JLC), 2012 WL 19379, at *14 (S.D.N.Y. January 3, 2012) ("[G]iven the reality of communications today ... the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755(ILG), 2011 WL 3235628, at *3 n. 3 (E.D.N.Y. July 27, 2011) T]he Court sees email as a relatively unobtrusive option" for providing notice to class members); *Gambino v. Harvard Protection Servs. LLC*, No. 10 Civ. 0983 (PAC), 2011 WL 102691, at *2 (S.D.N.Y. Jan. 11, 2011) ("Defendant is directed to produce, in a computer readable format, the names and last known mailing addresses, and alternate addresses, telephone numbers, last known email addresses, and dates of employment for all Defendant's employees ....").

*In re: Deloitte & Touche, LLP,* 2012 U.S. Dist. LEXIS 12641, at *6 (S.D. NY Jan. 17, 2012).

Recognizing this reality, courts in this district "often approve notice by e-mail of FLSA collective actions." *Jaso v. Bulldog Connection Specialists LLC,* 2015 U.S. Dist. LEXIS 140778, at *17 (S.D. Tex. Oct. 15, 2015). *See also Chano v. City of Corpus Christi,* 2018 U.S. Dist. LEXIS 59449 (S.D. Tex. April 6, 2018)(notice to be disseminated by mail and email); *Broussard v. Stein Mart, Inc.,* 2017 U.S. Dist. LEXIS 218123 (S.D. Tex. Sept. 25, 2017)(notice through mail and email); *Muhire v. Modani Houston LLC,* 2017 U.S. Dist. LEXIS 165147 (S.D. Tex. Mar. 16, 2017)(notice shall be disseminated through mail and email); *Turner v. Nine Energy Serv., LLC,*

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

2016 U.S. Dist. LEXIS 155640 (S.D. Tex. Oct. 4, 2016)(notice through mail, email, and posted notice). Plaintiff accordingly requests permission to send notice by email. (Ex. 23).

### 2. *Text Message*

Just as mailing notice is not always a foolproof method of delivering notice to potential Tipped Employees for reasons discussed above, email notice also has shortcomings. First, many individuals only check their email sporadically, as those individuals often only check their email accounts when logged in to a computer, and with the advent of smartphones, many individuals have only rare occasions to log on to a computer. Second, just as potential Tipped Employees are likely to have moved during the collective period, those members are also likely to have changed their email address during that same time period. Third, similar to regular mail, many people have trouble distinguishing between important emails and junk emails and are likely to delete the emailed notice without fully reading and understanding its message. Fourth, some email users select highly restrictive "spam" email settings that automatically send emails not from previously-approved sources to their "spam" folders. Most users do not regularly check their "spam" folders for emails that were inadvertently delivered to those folders. While Tipped Employees are not as likely to regularly use a computer to check their email, nearly everyone in today's society is in constant possession of a cell phone. In fact, a large portion of today's population has eliminated landline phones and therefore rely on cell phones as their sole means of communication. Therefore, notice through text message is an important method of dissemination that courts have recognized when conditionally certifying collective actions. *See Robbins v. Academy Ltd.*, 2019 U.S. Dist. LEXIS 149071, at *2-3 (S.D. Tex. Aug. 1, 2019)(notice by mail, email, and text message); Qazi v. Stage Stores, Inc., 2019 U.S. Dist. LEXIS 102363 (S.D. Tex. June 19, 2019)(notice by mail, email, and text message); *Sanchez v. R&R Multi-Trade Constr. Servs., LLC*, 2018 U.S. Dist.

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

LEXIS 198613 (E.D. Tex. Oct. 25, 2018)(notice by mail, email, and text message): Gilbreath v. Brookshire Grocery Co., 2018 U.S. Dist. LEXIS 159271 (E.D. Tex. Sept. 18, 2018)(notice by mail, email, and text message); *Cervantez v. TDT Consulting, LLC*, 2019 U.S. Dist. LEXIS 142409 (N.D. Tex. Aug. 21, 2019)(notice by mail, email, text message, postage at the workplace, posting online at proposed website, and inclusion in current employees' paychecks); *Lopez v. Bird Elec. Enters.*, 2019 U.S. Dist. LEXIS 149028 (W.D. Tex. June 26, 2019)(notice by mail, text message, and notice posted on a website solely dedicated to disseminating notice). Plaintiff accordingly requests permission to send notice by text message. (Ex. 24).

### 3. *Notice Reminder*

In addition to mailing the notice, a reminder should be sent by text and email shortly before the end of the opt-in period. Courts have routinely approved sending reminders. Such follow-up mailing contributes to dissemination among similarly situated employees and serves what the Supreme Court in *Hoffmann-La Roche* recognizes as section 216(b)'s "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. at 172. The reminder also serves the purpose of facilitating "the remedial purposes of the FLSA." *Gronefeld v. Integrated Prod. Servs.*, 2016 U.S. Dist. LEXIS 192476, at *19 (W.D. Tex. April 26, 2016). Therefore, district courts in Texas, including courts in this district, have approved the use of reminder postcards to further the goals of the FLSA. *Id. Salinas*, 2017 U.S. Dist. LEXIS at *16 (authorizing Plaintiffs to send reminder postcards via mail and email thirty days from the date of initial notice). Thus, the reminder is appropriate in this litigation.

### 4. *Posting*

Lastly, posting of notice by Defendant, specifically, near the restaurant's POS terminals, where it can be seen by current workers also contributes to dissemination among similarly situated employees. Courts around the country have recognized posting at the employer's premises (in

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

addition to mailing) as an efficient, non-burdensome method of notice that courts regularly employ. *See Argo,* 2015 U.S. Dist LEXIS at *7 (Defendant ordered to post notice in an open and obvious location at all job sites for ninety days); *Transito v. Mahard Egg Farm, Inc.,* 2016 U.S. Dist. LEXIS 56453 (E.D. Tex. April 28, 2016) (Defendant ordered to post notice in a conspicuous location at Defendant's facility for sixty day period). A copy of the notice, attached to this motion as Exhibit 22, informs Tipped Employees in neutral language of the nature of the action, of their right to assert FLSA claims by filing a consent to sue form with the Court, and the consequences of their joining or not joining the action.

## V.    EXPEDITED CONSIDERATION IS APPROPRIATE

Plaintiff further requests expedited consideration of this certification motion and expedited production of information for notice. Because collective actions depend on employees receiving "accurate and timely notice concerning the pendency of the collective action," courts have broad authority to ensure that potential class members "can make informed decisions about whether to participate." *McKnight v. D. Houston, Inc.,* 2010 U.S. Dist. LEXIS 129634, at *3 (S.D. Tex. Dec. 8, 2010). Courts have endorsed the sending of notice "as early in the case as is practicable" as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management. *Espinoza v. Stevens Tanker Div., LLC,* 2017 U.S. Dist. LEXIS 16823, at *4 (W.D. Tex. Feb. 7, 2017). In FLSA collective actions - unlike Rule 23 class actions - the statute of limitations for the FLSA claims of potential opt-in plaintiffs is ***not tolled*** by a plaintiff's initial filing of the complaint. 29 U.S.C. § 256(b). Thus, delay in disseminating notice to potential plaintiffs can prejudice their rights. *See Blake v. Hewlett-Packard Co.,* 2013 U.S. Dist. LEXIS 98690, at *10 (S.D. Tex. July 11, 2013)("conditional certification and notice early in the litigation allows potential plaintiffs the opportunity to toll the limitations period as to their individual claims

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

by making them aware of the pendency of the action and their right to opt-in."); *accord*

*Bridgewater v. GES Gladiator Energy Servs. Texas, LLC,* 2015 U.S. Dist. LEXIS 192429, at *6

(W.D. Tex. Dec. 22, 2015)(early notice "particularly important for FLSA collective actions as

potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff 'gives his

consent in writing to become a party"). Accordingly, Plaintiff moves the Court to adopt the

following deadlines and notice plan:

| DEADLINE | DESCRIPTION OF DEADLINE |
|---|---|
| **7 Days From Order Approving Notice to Collectives Members** | Defendant to produce the names, last known addresses, e-mail addresses, phone numbers, and dates of employment of the Tipped Employees in a usable electronic format. |
| **14 Days From Order Approving Notice to Tipped Employees** | Plaintiff Counsel shall send by mail, e-mail, and text a copy of the Court-approved Notice and Consent Form to the Tipped Employees. *See* Ex. 22; Ex. 23; Ex. 24.  Defendant is required to post the Notice and Consent Form at its facilities for sixty (60) days in an open and obvious location, such as by the POS terminals. |
| **60 Days From Date Notice is Mailed to Tipped Employees** | The Tipped Employees shall have sixty (60) days to return their signed Consent Forms for filing with the Court. Defendant may take down the posted Notice and Consent Form. |
| **30 Days from Date Notice is Mailed to Tipped Employees** | Plaintiff Counsel is authorized to send by text and e-mail a reminder to the Tipped Employees reminding them of the deadline for the submission of the Consent Forms. *See* Ex. 23 and 24. |

## VI.    RELIEF SOUGHT

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

For the foregoing reasons, Plaintiff respectfully requests that this Court conditionally certify this case as a collective action and enter an order:

1)    requiring Defendant to provide Plaintiff, in electronically readable form, the names, addresses, e-mail addresses, any employee number or unique identifier, dates of employment, and telephone numbers of all Tipped Employees within seven (7) days of the entry of the Order;

2)    requiring Defendant to provide Plaintiff, in electronically readable form, the dates of birth and last four digits of the social security numbers of anyone whose notice is returned as undeliverable;

3)    conditionally certifying this action as a FLSA collective action for the collective defined as: "All Servers, Bartenders, and Gauchos employed by Casa Do Brasil at its College Station location within the last three (3) years prior to the filing of the Complaint"

4)    authorizing a 60-day opt-in period;

5)    authorizing Plaintiff to issue the notice by mail (Ex. 22), e-mail (Ex. 23) and text (Ex. 24) within fourteen (14) days of the entry of the Order;

6)    requiring Defendant to post the notice for sixty (60) days in a conspicuous place in their offices within fourteen (14) days of entry of the Order;

7)    authorizing Plaintiff Counsel to re-mail notices that are returned as undeliverable for those individuals counsel can find better addresses; and

8)    permitting the texting and emailing of the Notice reminder (Ex. 23 and 24), thirty (30) days before the expiration of the opt-in period.

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*

Respectfully submitted,

**TRAN LAW FIRM**


   /s/ Trang Q. Tran
_____
TRANG Q. TRAN
Federal I.D: 20361
Texas Bar No. 00795787
2537 S. Gessner Suite 104
Houston, Texas 77063
Ph.: (713) 223 – 8855
trang@tranlf.com
service@tranlf.com

**ATTORNEY FOR PLAINTIFF, individually and on behalf of similarly situated individuals**


## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that attorney Trang Q. Tran has conferred with Defendant's counsel they are opposed.

                                                      /s/ *Trang Q. Tran*
                                                      Trang Q. Tran


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was forwarded on September 20, 2022, to all counsel of record via the Court's CM/ECF system.


                                                      /s/ *Trang Q. Tran*
                                                      Trang Q. Tran

*Plaintiffs' Motion To Authorize Notice To Potential Plaintiffs*