IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NATHALY CORTEZ, individually and on behalf of similarly situated individuals § § § § **Plaintiff** § § v. § § CASA DO BRASIL, LLC § § **Defendant** § | CIVIL ACTION NO. 4:21-cv-03991 |

**DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE
PLAINTIFFS' EVIDENCE IN SUPPORT OF MOTION TO AUTHORIZE NOTICE**

COMES NOW, Defendant Casa do Brasil, LLC ("Defendant") and files this its Objections to and Motion to Strike Plaintiff's Evidence in Support of Plaintiffs' Motion to Authorize Notice to Potential Plaintiffs, and in support thereof would respectfully show the Court as follows:

I.   **SUMMARY**

Plaintiff provided certain evidence in support of Plaintiffs' Motion to Authorize Notice to Potential Plaintiffs ("Plaintiffs' Motion"), including the Declarations of Named Plaintiff Nathaly Cortez and Opt-In Plaintiffs Joseph Felan and Mario Candiani. Particularly under the more stringent evidentiary standard articulated under *Swales v. KLLM Transport Services, Inc.* 985 F.3d 430, 443 (5th Cir. 2021), formerly applied by courts at the second step of the *Lusardi* conditional certification procedure, Defendant objects that these declarations are improper evidence and moves to strike such improper evidence. *See Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-00092, 2022 U.S. Dist. LEXIS 160236, *7-8 (E.D. Tex. Aug. 9, 2022). As detailed below, Defendant objects to the declarations as they contain statements which should be

1

stricken as they are made without personal knowledge as required by FED. R. EVID. 602, are mere speculation, are hearsay, are misleading, and constitute improper legal conclusions. Defendant further objects to Cortez's Declaration as a sham affidavit, as it contradicts Cortez's sworn deposition testimony. Accordingly, such evidence should be stricken and should not be given evidentiary consideration in evaluating whether or not Plaintiff's Motion to Authorize Notice to Potential Plaintiffs should be granted.

## II.     OBJECTIONS

### A.     Objections to Declaration of Nathaly Cortez.

Defendant objects to the Declaration as Cortez does not have personal knowledge of the matters testified to, is not competent to testify to ultimate issues, changes testimony previously sworn to in her deposition, and improperly uses her Declaration to make legal conclusions that are only for the Court to decide. *See Thomas v. Atmos Energy Corp.*, 223 Fed. Appx. 369, 374 (5th Cir. 2007) ("[P]ortion[s] of [plaintiff's] affidavit should be excluded because it contains legal arguments and conclusions inconsistent with the requirements of [Federal] Rule [of Evidence] 701."). In addition, Cortez's Declaration contradicts the sworn testimony Cortez offered at her deposition a mere four (4) days earlier,[1] and Cortez fails to offer any explanation for such contradictions and is, therefore, a shame affidavit.[2]

Defendant objects to the following testimony in Cortez's Declaration:

1.      Paragraph 13 ("I knew I was not being paid correctly.").

Defendant objects to this testimony as outside the scope of Plaintiff Cortez's own personal knowledge and as an improper legal conclusion.

---

[1] For the convenience of the Court, Cortez's Declaration is attached hereto as Exhibit A, and relevant portions of Cortez's Deposition are attached hereto as Exhibit B.
[2] The Southern District has applied the sham affidavit doctrine in the context of certification of a collective action. *Aguirre v. Tastee Kreme #2*, Civ. Action No. H-16-2511, 2017 U.S. Dist. LEXIS 83327 at *10-11 (S.D. Tex. May 31, 2017) (*citing Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (5th Cir. 2010)).

2

2. Paragraph 14 ("There were multiple occasions that I saw the managers adjust my time clock in and clock out *to shave time in order to avoid paying me overtime*.")

Defendant objects to the italicized testimony as making an improper legal conclusion, as speculative, and as outside the scope of Plaintiff Cortez's personal knowledge as to the reason why any time may have been adjusted on her clock in and clock out times.

3. Paragraph 16 ("clock out time that Jarbas Gottardo made on my time sheet are not correct because he did not ask me what time I got off work and was frequently not present to witness what time I got off work. He just made up the clock out time when he made the time edits because I did not tell him to change my time records. No one asked for my permission before they changed my time records. No one told me that they changed my time records or asked me if the changes were correct.")

Defendant objects to this testimony as conclusory in nature and as misleading. Defendant objects to this testimony as being made without personal knowledge, as Cortez has no knowledge as to how or why Mr. Gottardo made certain edits Cortez's records. Defendant objects to this testimony as contrary to prior deposition testimony where Plaintiff Cortez testified that she would call to inform Defendant of what time she left when forgetting to clock out and that she cannot recall whether or not she discussed changes to her time on other occasions. *See* Ex. B at 105:23-24, 146:16-147:12, 149:1-150:16.

4. Paragraphs 31, 32, 33, 34, 42, 43 and 44 (characterizing Defendant's Customer Service Representatives as managers[3])

---

[3] "Customer Service Representative's acted as managers and did the same duties as a manager." (Ex, A at ¶ 31); "Customer Service Representatives were each assigned to supervise and manage an area of the restaurant every shift. When they did this, they supervised multiple employees at a time." (Ex. A at ¶32); "It was common for a Customer Service Representative to be the main supervisor of the entire restaurant, especially if a manager was not on duty, or out of the restaurant for a shift, This was especially true at closing, and the managers left for the day." (Ex. A. at ¶ 33); "I know Customer Service Representatives were able to recommend a potential new hire." (Ex. A, ¶ 34); "CSR Managers had the following Management Duties including check me out at the end of my shift, assign closing duties, make comps or voids, close the restaurant, be someone to call in sick to, do inventory, run meetings, interview potential new hires, write up Tipped Employees, and other manager duties." (Ex. A, ¶ 42); "CSR's had the primary duty is the management of the dining rooms. Often times, the CSR was in charge when the General Manager, Jarbas Gottardo was not scheduled to work that day or had left for the day and did not close." Ex. A, ¶ 43); and "The CSR regularly supervised and directed the work of at least two employees each shift. The reason for this is that each shift would have at least a server and Gaucho under the CSR's supervision. Our dining room areas frequently have many servers and Guacho working under a CSR each shift." (Ex. A, ¶ 44).

3

In the cited paragraphs of her Declaration, Cortez makes a number of statements either expressly stating that Defendant's Customer Service Representatives are management employees or testifying about matters regarding Customer Service Representatives' alleged duties and responsibilities. Defendant objects to this testimony as speculative in nature and as constituting and containing improper legal conclusions.[4] Defendant further objects to this testimony as lacking the required personal knowledge and otherwise without proper foundation establishing Cortez's personal knowledge to the extent Cortez purports to testify regarding the duties of employees as opposed to activities performed by employees she personally observed, particularly as Cortez never worked as a Customer Service Representative. *See* Ex. B, Depo. at 39:3-5. Defendant objects to this testimony as misleading.

5.   Paragraph 25 ([the Tip Pool] "Agreement does not include Customer Service Representative's [sic]")

Defendant objects to this testimony as being made without the required personal knowledge, as mere speculation as to the scope of the Tip Pool Agreement and as misleading. Defendant objects to this statement as the Tip Pool Agreement itself, as referenced in the statement, is the best evidence of the members of the Tip Pool. Defendant objects to this testimony as contrary to prior deposition testimony, as Cortez previously testified that the Tip Pool Agreement did not reference CSRs. *See* Ex. B at 32:7-9.

6.   Paragraph 15 ("I never took a break during my shift.")

Defendant objects to this testimony as directly contrary to Cortez's prior deposition testimony, where Plaintiff Cortez stated that she took certain meal breaks. *See* Ex. B at 112:12-24 ( "We worked 12-hour shifts, and we had 15 minutes to eat pizza. That's only of the only meal breaks that I would ever take.").

---

[4] The test for evaluating whether individuals are managers or supervisors is identified in 29 C.F.R. § 531.52(b)(2) (referencing 29 C.F.R. § 541.100(a)(2) through (4) and 29 C.F.R. § 541.101).

4

7.   Paragraphs 19 and 20 ("There were multiple occasions that I had to pay for a wrong order using the tips in the cash tip box." and "If anyone on my shift made a mistake where a customer did not pay for a drink or meal, Casa do Brasil would make us pay for it from the cash box.")

Defendant objects to Cortez's testimony as it conflicts with Cortez's sworn deposition testimony, in which Cortez indicated that she observed cash being removed from the cash box on a single occasion and that she heard, from unnamed servers, that cash was removed from the cash box on another occasion.  *See* Ex. B, . at 88:15-19; 88:23-89:4, 100:9-24.  In addition, with regard to Paragraph 20, Defendant objects to Cortez's testimony as being made without personal knowledge or other proper foundation and as speculation.

8.   Paragraphs 39 and 41 ("I did not receive notice about how I would be paid or tipped." and "I did not sign the Tip Pooling Agreement, attached as Exhibit 1E.")

Defendant objects to this testimony as it conflicts both with Cortez's prior deposition testimony.  Cortez testified that she discussed her compensation with Defendant's General Manager, that she was told about a tip pool, and that she executed a Tip Pooling Agreement.  *See* Ex. B at 72:18-22; 26:24-27:7.  Defendant further objects as this statement conflicts with other testimony in Cortez's Declaration (*see* Ex. A, ¶ 40) and evidence provided in support of Plaintiffs Motion (*see* "Tip Pooling Agreement", attached to Pls.' Mot. as Ex. 1E [Dkt. 45-7]).

9.   Paragraph 45 ("It was mandatory that I passed this test with the CSR.")

Defendant objects to this testimony as lacking foundation, as Cortez lacks personal knowledge of the requirements to move from server trainee to server; Cortez testified at her deposition that she lacked personal knowledge regarding this subject.  *See* Ex. B, at 55:7-14, 55:21-23.

10.   Paragraph 54 ("there is no entry on my pay checks that show how much I was paid in credit card tips" . . . "If the miscellaneous payments were part of my credit card tips, I earned that pay period, it's not correct and does not match")

5

Defendant objects to this testimony characterizing the contents of Cortez's pay stubs as misleading and as directly contrary to her prior deposition testimony. When asked "So the pay stub would reflect an amount of credit-card tips paid to you; right?", Plaintiff Cortez responds "Right." *See* Ex. B at 92:19-21. Defendant also objects to this testimony not the best evidence and as misconstruing the record. Attached to Plaintiffs' Motion as Exhibit 1C is a sample of Cortez's pay stub, which lists "Credit Tips" and includes an amount of "Credit Tips" earned for "This Period." Further, Plaintiff testified that "miscellaneous earnings" was the additional compensation paid to Cortez to ensure she was paid $20 per hour. *See* Ex. B at 235:21-25. Defendant objects to this testimony as not the best evidence, as Cortez's pay stubs are the best evidence.

  11. Paragraph 56 ("[T]he manager or CSR would then claim my tips at some point after, without my consent or confirmation that it was what I received.")

Defendant objects to this testimony as making conclusory allegations. Defendant objects to this testimony as outside the scope of Plaintiff Cortez's personal knowledge in regard to what position did, or could, claim tips. Defendant objects to this testimony as misleading.

  **B.** **Objections to the Declaration of Mario Candiani.**

Defendant objects that Candiani's Declaration consists primarily of Candiani's subjective beliefs and conclusory allegations, misconstrues facts, and is filled with assertions outside the scope of Candiani's personal knowledge and improper legal conclusions. Accordingly, Defendant objects to the following testimony in Candiani's Declaration:

  1. Paragraph 5 ("If there was a mistake that cost the restaurant money, such was a customer walking out without paying, mis-order, ordering too many meals by accident, Casa would take money from our tip pool to pay for the mistakes. . . If someone didn't pay and Jarbas found out about it, he would order that it be taken from the box of our pooled cash tips. Mistakes happens all the time. As tipped employees, we would help each other fix the mistakes by getting another customer to order the extra meal or transferring the misorder to another table so a

different customer would pay for it. If we didn't fix the mistake by the end of the shift, we knew Casa would take money from our cash box to pay for the mistake.")

Defendant objects to this testimony as speculative, lacking in proper foundation in fact, and as outside the scope of Candiani's personal knowledge. Defendant objects to this testimony as misleading and as misconstruing fact, and as conclusory in nature.

2. Paragraphs 7 and 10 ("The CSR tells the servers, bartenders, and Gaucho who worked on the floor, and if anything needed to be done." and "The CSR would discipline us if we didn't follow their instruction or Casa's policies.")

Defendant objects to this testimony as hearsay. Defendant objects to this testimony as speculative, lacking in proper foundation in fact and as outside the scope of Candiani's personal knowledge, as Candiani nowhere indicates that he heard or observed the actions of the CSR described herein.

3. Paragraph 8 ("CSRs had different job duties than bartenders, servers, and gaucho. Additional duties included, doing inventory and Cameron was a CSR who did the schedule. If I needed to train, the CSR would train me. If a Tipped employee needed someone to comp or discount, tranfer [sic] or move a table or item, we would have to go through the CSR. If a customer wanted to return an item or changed his/or her mind, we would have to ask a CSR permission because only they had the manager code to change the order.")

Defendant objects to this testimony as making an improper legal conclusion. Defendant objects to this testimony as lacking proper foundation in fact and as speculative. Defendant objects to this testimony as misleading and as misconstruing fact. Defendant objects to this testimony as outside the scope of Candiani's personal knowledge.

4. Paragraph 9 ("The CSRs regularly supervised 2 or more employees because they supervised the servers, bartenders, and Gaucho.").

Defendant objects to this testimony as an improper legal conclusion. Defendant objects to this testimony as misleading and as misconstruing fact. Defendant objects to this testimony as outside the scope of Candiani's personal knowledge.

7

5. Paragraph 11 ("At the end of the night, everyone that worked in the shift would get an equal share of the cash tips.")

Defendant objects to this testimony as conclusory and speculative. Defendant objects to this testimony as lacking proper foundation, misleading and as misconstruing fact. Defendant objects to this testimony as outside the scope of Candiani's personal knowledge.

6. Paragraph 12 ("I think managers and CSRs edited my time.")

Defendant objects to this testimony as lacking proper foundation in fact and as speculative in its entirety. Defendant objects to this testimony, as the best evidence of such matters are the audited time records.

7. Paragraph 13 ("Casa told me to clock out at even time like 8 or 10 but I was not getting paid for all the time I worked. . . . I had a feeling that they were changing and reducing my work time often.")

Defendant objects to this testimony as it contains hearsay, and further objects that such hearsay cannot be attributed to Defendant as Candiani nowhere specifies the individual or the position of the individual who made the alleged statement. Defendant objects to this testimony as lacking a proper foundation to establish Candiani's personal knowledge and as speculative and conclusory. Defendant objects to this testimony, as the best evidence of such matters are the audited time records.

C. **Objections to the Declaration of Joseph Felan.**

Defendant objects that Felan's Declaration consists primarily of Felan's subjective beliefs and conclusory allegations, misconstrues facts, and is filled with assertions outside the scope of Felan's personal knowledge. Felan's Declaration additionally makes several inappropriate legal conclusions. Defendant objects to the following testimony from Felan's Declaration:

1. Paragraphs 5, 23 and 27 ("At the end of the evening, the tips would be divided equally by everyone that worked on the shift including CSRs, bartenders, servers,

8

and Gaucho. The CSRs participated in the tip pool and collected money from the tips that we earned." and "At the end of the night, everyone that worked in the shift would get an equal share of the tips.")

Defendant objects to this testimony as conclusory and speculative. Defendant objects to this testimony as lacking proper foundation, misleading and as misconstruing fact. Defendant objects to this testimony as outside the scope of Felan's personal knowledge. Defendant objects to this evidence as not the best evidence, as Defendant's records are the best evidence.

2. Paragraph 7 ("I regularly worked overtime. Casa did not pay me time and a half for all the hours I worked over 40 a week.")

Defendant objects to this testimony as conclusory in nature, misleading, as not based in fact, and as lacking proper foundation. Defendant objects to this testimony as not within the scope of Felan's personal knowledge. Defendant objects to this testimony, as the best evidence of such matters is his pay statements, which were not produced.

3. Paragraph 10 ("Casa required us to pay for any mistakes made by any bartenders or servers on a shift by deducting cash tips from the tip pool that day.")

Defendant objects to this testimony as outside the scope of Felan's personal knowledge and without proper foundation. Defendant objects to this testimony as speculative and conclusory.

4. Paragraph 11 ("The CSR who worked at Casa had management duties and authorities.")

Defendant objects to this testimony as making an improper legal conclusion. Defendant objects to this testimony as outside the scope of Felan's personal knowledge.

5. Paragraphs 13, 16, 17, 18 and 24 ("The CSR supervised the dining areas and told us what to do. I saw the CSR, assign closing duties"; "The CSR would handle calls from employees who called in sick or called out for a shift. We would have to call the CSR for permission if we were going to call out on a shift. The CSR would do inventory, run long meetings, and other manager duties"; "CSR had different job duties than bartenders, servers, and gaucho. They did inventory and prepared our schedules"; "If a Tipped Employee needed a comp we would have to

9

go through the CSR. Any discount or compo have to go through them. If you want a transfer move a table or item from table wrong table. If a customer wanted to return an item or changed his/or her mind, we would have to ask a CSR permission because only they had the manager code to change the order"; and "The CSR tells the servers, bartenders, and Gauchos who worked on the floor, if anything needed to be done.")

Defendant objects to this testimony as Felan lacks personal knowledge regarding the job duties of other employees and fails to establish any proper foundation for his personal knowledge in regard to the testimony, particularly that testimony presented regarding the activities of other employees. Defendant objects to this testimony as misleading and as speculative.

6. Paragraphs 19, 25 and 26 ("Regis Cerutti was the beverage director . . He was a manager . . . . He was one of the top managers and took cash tips from the cash pool.", "The CSR and Beverage Director participated in the tip pool." and "The CSR and Beverage Director received tips from customers that they did not serve directly or exclusively. . . I then had to put my cash tip into the tip pool that was shared with the CSR and Beverage director received cash." )

Defendant objects to this testimony as making an improper legal conclusion. Defendant objects to this testimony as misleading and misconstruing the record. Defendant objects to this testimony as lacking a proper foundation in fact and as outside the scope of Felan's personal knowledge, particularly to the extent Felan testifies regarding the activities of another employee, including the participation of other employees in the tip pool.

7. Paragraph 20 ("The blue shirts were reserved only for managers.")

Defendant objects to this testimony as speculative and outside the scope of Felan's personal knowledge.

8. Paragraph 22 ("Since the CSR regularly supervised 2 or more employees because they supervised the servers, bartenders, and Gauchos working each shift.")

Defendant objects to this testimony as an improper legal conclusion. Defendant objects to this testimony as misleading and as misconstruing fact. Defendant objects to this testimony as outside the scope of Felan's personal knowledge.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that the Court grant this Motion, sustain Defendant's objections, strike the above-cited evidence submitted by Plaintiff, and grant such other and further relief to which Defendant is justly entitled.

Respectfully submitted,

*/s/ Ramon D. Bissmeyer*
**Ramon D. Bissmeyer**
State Bar No. 00787088
So. Dist. No. 17446
**DYKEMA GOSSETT PLLC**
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395
Email: rbissmeyer@dykema.com

and

**Elizabeth A. Voss**
State Bar No. 24075160
So. Dist. No. 1241751
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401
Email: evoss@dykema.com

**ATTORNEYS FOR DEFENDANT CASA DO BRASIL, LLC**


## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Trang Q. Tran
Tran Law Firm
2537 S. Gessner Suite 104
Houston, Texas 77063
Trang@tranlf.com
service@tranlf.com

                                          */s/ Ramon D. Bissmeyer*
                                          Counsel for Defendant

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.l(D) and Court Procedure No. 5(C)(2)(b), I certify that Ms. Abigail Orgeron, an attorney in my office, attempted to confer with Mr. Trang Q. Tran, counsel for Plaintiff, on October 11, 2022,[5] in an effort to resolve the issues contained in this Motion. As of the filing of this Motion, I have been unable to confer with Mr. Tran regarding the substance of this Motion.

                                          */s/ Ramon D. Bissmeyer*
                                          Counsel for Defendant

---

[5] Defendant's counsel acknowledges that he did not comply with the 2-day requirement imposed by this Court's Court Procedure No. 5(C)(3).