United States District Court
Southern District of Texas
**ENTERED**
December 19, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **NATHALY CORTEZ,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| VS. § | **CIVIL ACTION NO. 4:21-CV-03991** |
| § | |
| **CASA DO BRASIL, LLC,** § | |
| § | |
| **Defendant.** § | |

## MEMORANDUM & ORDER

Now pending before the Court is Plaintiff's Motion to Authorize Notice to Potential Plaintiffs. (Doc. 45.) On December 9, 2022, the Court held a hearing on the Motion. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

### I.      FACTUAL BACKGROUND

Casa do Brasil is a Brazilian-style steakhouse operating restaurants in Texas. Plaintiff Nathaly Cortez alleges that she worked as a hostess and server at Defendant's College Station restaurant from June through October 2019, and again from November 2020 through April 2021. (Doc. 45-2 at 2-3.)

In December 2021, Plaintiff filed suit on behalf of herself and all others similarly situated, seeking redress for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), by Defendant. In March 2022, this Court granted limited pre-notice discovery. As directed, Defendant produced Jarbas Gottardo, a customer service representative ("CSR") and Cameron Rogenby, a manager, for deposition. Defendant also produced time adjustment records for several anonymized employees. Two additional former employees filed consent to join the

action in September 2022. (Docs 39, 40.) Joseph Felan previously served as a bartender for Defendant, while Mario Candiani worked as a server. (Docs. 45-11, 45-12.)

Plaintiff now requests that this Court authorize notice to "[a]ll Servers, Bartenders, and Gauchos[1] employed by Casa Do Brasil at its College Station location within the last three (3) years prior to the filing of the Complaint." (Doc. 45 at 6.)

The parties agree that Defendant's servers, bartenders, and gauchos were all tipped employees who were required to participate in the tip pooling system alongside CSRs. *Id.* at 7-9. Plaintiff argues that the management and structure of this tip pool violated the FLSA. First, Plaintiff alleges that, when employees made mistakes, Defendant occasionally deducted cash tips prior to distribution of the tip pool. *Id.* at 14. Second, she alleges Defendant required tipped workers to participate in an invalid tip pool that included CSRs who did not customarily receive tips. *Id.* at 14-17. Third, Plaintiff alleges Defendant failed to properly notify employees of the tip pooling system. *Id.* at 17. Fourth, Plaintiff alleges that managers regularly edited employees' time records without their permission to shave off overtime and otherwise avoid paying employees time and one half for all hours in excess of forty in a workweek. *Id.* at 13-14.

As evidence for her arguments, Plaintiff provides, among other documents, the following:

- Declarations from Plaintiff Cortez (Doc. 45-2) and opt-ins Felan and Candiani (Docs. 45-11, 45-12) describing their experiences working for Defendant as servers and bartenders.
- Time sheets (Docs. 45-3, 45-4), earning statements (Doc. 45-5), and time edit logs, (Doc. 45-6).
- Tip pooling notices and agreements distributed at various times throughout Plaintiff's employment. (Docs. 45-7, 45-8, 45-9, 45-10.)
- A CSR job description. (Doc. 45-11.)
- Transcripts from the depositions of Rogneby and Gottardo. (Docs. 45-14, 45-15.)
- An employee handbook and server training manual. (Docs. 45-17, 45-25.)

---

[1] "Gauchos are servers who circulate around the dining tables with skewers of meat in order to slice and serve meat to guests at their tables." (Doc. 1 at 2.)

Plaintiff seeks authorization to notify potential collective action members. She asks the Court to direct Defendant to provide names, addresses, emails, telephone numbers, dates of birth, and the last four digits of their social security numbers. (Doc. 45 at 24-25.) She further moves for the court to authorize dissemination of the notice by mail and email and reminders by text. *Id.* at 26-30. She proposes the following schedule: *Id.* at 31.

- 7 days from order approving notice: Defendant will produce required information in a usable electronic format
- 14 days from order: Plaintiff will send Notice to employees over mail, e-mail, and text. Defendant will post the Notice and Consent form at its facilities for sixty days at an open and obvious location. Plaintiffs have 60 days to opt in.
- 30 days from date notice is mailed: Plaintiff can send a text and email reminder

## II. LEGAL STANDARD

### A. FLSA Requirements for Tipped Workers

The FLSA requires employers to pay their employees the federal minimum wage. 29 U.S.C. § 206(a). Tipped employees must be paid a wage equal to the federal minimum wage, but the tips they receive can count towards that wage if they are paid by employers a minimum of $2.13 per hour. 29 U.S.C. § 203(m)(1-2); 29 C.F.R. § 531.50(a). This is referred to as a "tip credit." An employer using tip credits is required to have (1) informed its employee that it will take a tip credit and (2) allowed tipped employees to keep the tips they received. 29 C.F.R. § 531.50(a). The statute provides an exception to this rule, permitting "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A)(ii). But "[i]f an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit." *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015); *see also* 29 C.F.R. § 531.50(c). This prohibition applies to employers' managers and supervisors. 29 C.F.R. § 531.52(b)(2).

### B. Collective Actions Under FLSA

The FLSA authorizes plaintiffs to bring collective actions against their employers on behalf of themselves and other "similarly situated" employees:

> An action to recover the liability [for violations of the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b). Section 216(b) collective actions are intended "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008). To become a party plaintiff, each person must affirmatively opt into the collective action by providing a written, filed consent. *Id.* sat 916. To facilitate this opt-in process, courts have the discretion to facilitate notice to potential plaintiffs early in litigation. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

Recent Fifth Circuit caselaw has upended a traditional two-step certification process which allows district courts to conditionally certify collective actions in FLSA cases. *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021) (rejecting the two-step certification framework established in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). The *Swales* panel directed district courts to "rigorously scrutinize the realm of 'similarly situated' workers . . . *from the outset of the case*." *Id.* at 436 (emphasis added). To determine whether notice should be provided, district courts must decide whether "merits questions can be answered collectively." *Id.* at 442.

Depending on the underlying issues in each case, a court may require varying degrees of pre-notice discovery before making a determination. In some cases, such as where "the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job

. . . , a district court will not likely need mountains of discovery to decide whether notice is appropriate. In another case, such as . . . . where Plaintiffs have demonstrably different work experiences, the district court will necessarily need more discovery." *Id.* at 441-42. In these cases, a court may "(1) 'conclude that the Plaintiffs' and Opt-ins are too diverse a group' to support a collective action; (2) 'decide that [the court] needs further discovery to make [a] determination'; or (3) 'find that only certain subcategories of' employees 'should receive notice.'" *Eltayeb v. Deli Mgmt., Inc.*, No. 4:20-CV-00385, 2021 WL 5907781, at *2 (E.D. Tex. Dec. 14, 2021) (quoting *Swales*, 985 F.3d at 443).

Courts must be cautious about opining on or endorsing the merits of a plaintiff's action at the notice stage. *Swales*, 985 F.3d at 440 ("The law instead says that the district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case."); *see also Hoffman-La Roche, Inc.*, 493 U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."). As a general matter, "[c]onsidering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits." *Swales*, 985 F.3d at 442. However, *Swales* notes an exception to this principle where a "merits issue" is a "dispositive, threshold matter[.]" *Id.* at 441 (citing *In re: JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019)). In some instances, the Court must decide whether plaintiffs may bring FLSA claims at all. For instance, a Court may need to determine whether an arbitration agreement forecloses collective action or whether plaintiffs should be classified as employees at all. In these cases, the district court should decide the threshold legal issue before determining whether notice is proper. *Id.* at 441.

### III. ANALYSIS

#### A. Analytic Structure

Plaintiff bears the burden of showing that potential plaintiffs are similarly situated to proceed to the notice stage. *Swales*, 985 F.3d at 435 n.65. While district courts in the Fifth Circuit no longer apply the *Lusardi* two-step process, they have continued to use factors from *Lusardi* to determine whether employees were "similarly situated" with respect to the alleged violations. *See, e.g.*, *Torres v. Chambers Protective Services, Inc., et al.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *3 n.3 (N.D. Tex. Aug. 5, 2021) (citing post-*Swales* cases that still use the *Lusardi* factors); *Segovia v. Fuelco Energy LLC*, No. 17-cv-1246, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021) ("*Swales* did not change the inquiry as to whether an FLSA action may proceed as a collective action. It instead changed when that determination should be made."). Those factors are: "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Lusardi*, 118 F.R.D. at 359.

##### 1. Factual and Employment Settings of Individual Plaintiffs

The first factor "assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary to determine if the potential opt-ins are similarly situated." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018). Class members do not have to hold identical employment to be similarly situated. Rather, plaintiffs "must show a 'demonstrated similarity' among the purported class members, as well as a 'factual nexus' that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unimaginable trial of individualized inquiries." *Cotton-Thomas v. Volvo Grp.*

*N. Am., LLC*, No. 3:20-CV-113, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021) (citing *Swales*, 985 F.3d at 443).

Post-*Swales*, courts have continued to provide notice to a proposed class that involves multiple job positions where "[t]he fact that members of the putative collective class . . . have different job titles does not preclude a finding that they are similarly situated." *Hamm v. Acadia Healthcare Co.*, No. CV 20-1515, 2022 WL 2713532, at *2 (E.D. La. July 13, 2022) (certifying a proposed collective of patient care employees including nurses, nursing staff, nursing assistants, nurse aides, technicians, clerks, nonexempt therapists, and other non-exempt employees similarly situated); *see also Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 724 (S.D. Tex. 2021) ("Based on the evidence presented . . . the non-discretionary nature of the bonuses does not vary among job title, duties, or location. Thus, whether the employees in the identified positions were subjected to the same pay practice . . . , and therefore are similarly situated, does not depend on the employees' specific job duties or where the employee worked."); *Hernandez v. Pritchard Indus. (Southwest), LLC*, No. Civ. A 20-cv-0508, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021) (certifying a class of janitorial workers with different job titles, such as "working building supervisor," "general service worker," "general cleaner," and "janitor"). *Compare with Eshelman v. MPFP, LLC*, No. 4:20-CV-3119, 2022 WL 2655821, at *2 (S.D. Tex. June 22, 2022), *report and recommendation adopted*, No. 4:20-CV-03119, 2022 WL 2652021 (S.D. Tex. July 8, 2022) ("This case differs from those in which the specific job duties or work location of each prospective collection action member is irrelevant to the legality of a universal pay scheme.").

### 2.Individualized Defenses

Second, courts look to whether the defendant's defenses are so individualized that it is inefficient or unmanageable to proceed with a representative class. *Trottier v. FieldCore Serv.*

*Solutions, LLC*, No. 2:20-CV-186, 2022 WL 658765, *8 (N.D. Tex. March 4, 2022). Even though a "defense may require specific factual inquiries about each Plaintiff," when the Defendant asserts the defense against each Plaintiff, "collective treatment is less problematic." *Segovia*, 2021 WL 2187956, at *10. Further, "to the extent there are individual defenses that apply to specific Plaintiffs or categories of Plaintiffs," the court may weigh whether "such defenses carry less weight than the global defenses and the similarities of the Plaintiffs . . . . Even if Defendant must pose an inquiry to each of the [individual] Plaintiffs, the Court may determine that doing so in a collective trial is no more difficult than in individual trials." *Id.* at *11; *see also Torres v. Chambers Protective Services, Inc., et al.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *7 (N.D. Tex. Aug. 5, 2021) (finding the need to assess by sub-group does not "sufficiently individualize defenses to prevent efficient collective action"). Ultimately, "the district court has the discretion to determine whether the potential defenses would make the class unmanageable." *Reyes v. Texas Ezpawn, L.P.*, No. CIV.A. V-03-128, 2007 WL 101808, at *5 (S.D. Tex. Jan. 8, 2007).

### 3. Fairness and Procedural Considerations

Finally, courts examine whether notice would facilitate the primary purposes of FLSA collective actions—"(1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the same alleged activity." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 743 (W.D. Tex. 2018).

### B. Individuals Claims

The task for the Court is to determine whether Plaintiff sufficiently demonstrates that Defendant subjected all of its College Station servers, bartenders, and gauchos to the same alleged unlawful compensation arrangements. As a threshold matter, Plaintiff establishes that all putative class members were paid pursuant to the same tip credit and subject to the same alleged pay issues.

While the specifics of their job descriptions differed, these differences do not seem obviously material to the underlying arguments. *See Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *11 (E.D. Tex. June 13, 2022) (finding class members were "all paid in the same manner (pursuant to the tip credit); [] were all subject to the same pay policy at issue; and [would be] owed compensation as a result of [Defendant's alleged] use of an invalid tip pool"). Taking each argument in turn, the Court finds that parties are sufficiently similar with respect to one of Plaintiff's arguments.

### 1. Tip Deductions

Plaintiff first alleges that, on limited occasions, Defendant took deductions from pooled cash tips for mistakes. Plaintiff establishes that all proposed plaintiffs—as tipped employees participating in the tip pool—would be equally impacted by deductions from cash tips. Plaintiff supplies statements from the three declarants to corroborate her allegation that Defendant had a policy of deducting tips. (Docs. 45-2 at ¶¶ 18, 21-22; 45-11 at ¶ 5; 45-12 at ¶ 10.) However, as Defendant argues, the evidence does not establish that the deductions were a widespread practice that would benefit from a collective action. Rather, the proffered statements provide contradictory statements as to how common these deductions were.[2] Given the apparently disparate nature of the claim, the Court would need further discovery to determine whether the proposed class was similarly situated with respect to Plaintiff's tip deduction claims.

---

[2] *Compare* Docs. 45 at 8-9 ("Defendant admits that, on a very limited number of occasions, deductions were taken from the cash tips prior to distribution of the cash tips to those participating in the tip pool during the shift at issue at Defendant's restaurant in College Station, Texas."); 45-2 at ¶ 21 ("I personally saw on at least one occasion the CSR or manager take money from the cash tip box; *with* Doc. 45-11 at ¶ 5 ("If we didn't fix the mistake by the end of the shift, we knew Casa would take money from our cash box to pay for the mistake.").

### 2. Distribution of Pooled Tips

Second, Plaintiff argues that the tip pools she and the putative class were required to participate in improperly included non-tipped managers. As a result, Plaintiff and others were given less money than they earned. Defendant does not dispute that servers, bartenders, and gauchos are all tipped employees. Nor does Defendant dispute that CSRs participate in the tip pool. This is enough to establish a demonstrated similarity between the parties with respect to this claim.

Defendant's predominant defense—that its tip pools are valid—does not require this Court's analysis at this point. Both parties seek to address the merits of Plaintiff's claim by analyzing whether CSRs are managers. But this inquiry is inappropriate at the notice stage. *Swales* requires only that district courts reach the merits of issues concerning threshold issues which may determine whether parties can bring claims at all. "Though Swales directs district courts to consider the merits of an action at the outset, the focus of the inquiry is . . . not whether a plaintiff 'will ultimately prevail in proving all the elements of the alleged FLSA violation[,]' but whether the merits of the proposed collective's case can be decided collectively." *Garcia-Alvarez*, 2022 WL 2119542, at *5 (citing *Sterling v. Greater Hous. Transp. Co.*, No. CV H-20-910, 2021 WL 2954663, at *2 (S.D. Tex. July 14, 2021)). "[T]he notice stage is not the equivalent of the dispositive motions stage and thus is not the proper time to adjudicate the lawfulness of Defendants' policy." *Collins v. Pel-State Bulk Plant, LLC*, No. MO20CV00083DCRCG, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021). Consideration of CSRs' management status does not impact whether servers, bartenders, and gauchos can bring an FLSA collective action. Rather, this goes to the lawfulness of Defendant's actions.

Nor does this defense require an individualized inquiry. If anything, Defendant's argument provides more reason for collective analysis of whether CSR's inclusion in the tip pool is lawful. An Eastern District of Texas case has considered nearly the exact same question as is presently in front of this Court. There, the court concluded that:

> Plaintiff has sufficiently shown, on the current record, that the Court can determine the central merits question on a collective basis. While [Defendant] disputes Plaintiff's allegations, it has not identified differences that require individualized proof or shown how these differences affect adjudication of the alleged common unlawful practice—improperly including CSRs in the tip pool.

*Garcia-Alvarez*, 2022 WL 2119542, at *12. This Court agrees and concludes that Plaintiff has established its putative class is similarly situated for the purposes of pressing its claim.

### 3. Tip Pooling Notice

Plaintiff alleges that she did not initially receive the Notice to Tipped Employees or Tip Pooling Agreement that Defendant implemented. Plaintiff also alleges that the Tip Pooling Agreement employees initially received, and lack of posted signs violate the FLSA. (Docs. 45-2 at ¶ 48; 45-7; 45-11 at ¶ 14.) However, the FLSA provides employers with broad discretion in the type of notice they provide employees. "[T]o meet [the notice] requirement, an employer need not explain the tip credit in detail to its employees. However, it must at a minimum inform the employees that 'it intends to treat tips as satisfying part of the employer's minimum wage obligation.' An employee's awareness of an industry-wide practice that employers generally use a tip credit does not satisfy this requirement." *Gustavus v. Cazos, Inc.*, 774 F. Supp. 2d 856, 858 (S.D. Tex. 2011).

Defendant cites its tip pooling agreement and acknowledgments, as well as Gottardo's deposition, for evidence that employees were informed of the agreement orally and, later, provided with written notice. (Doc. 50 at 12-15.) While some employees were required to sign notice forms,

others were given oral notice. Further, the language of the written notice Defendant provided seems to have changed at least once. (Docs. 45-7; 45-8; 45-10.)

Defendant's defenses would likely be individualized based on the information employees obtained when they began work. Accordingly, Plaintiff does not establish that notice should be given for this alleged harm.

### 4. Overtime Shaving

Finally, Plaintiff alleges that Defendant regularly shaved tipped employees' time entries without their permission to avoid paying overtime. Plaintiff seeks to corroborate this claim with time records demonstrating significant time adjustments, allegations in Cortez's deposition, and statements from Gottardo testifying that he changed time entries for all three positions without documenting the reasons. (Docs. 45-2 at ¶ 24; 45-6; 45-15 (Gottardo Tr. 99:24-25, 100:1-5, 21-25)).

In response, Defendant argues that Plaintiff's time records show only four weeks when overtime was shaved, and that these adjustments were due to forgetting to clock out or take meal breaks. Defendant further argues that it supplied Plaintiff with several other audit reports, which Plaintiff did not provide to the Court. (Doc. 50 at 28.) Plaintiff subsequently supplemented his motion with some of these records. (Doc. 58.) Finally, Defendant alleges that the CSR paystubs demonstrate it regularly paid overtime. *Id.* at 20 n.12.

Plaintiff has not done enough to establish that the common time adjustments regularly resulted in lost overtime. At this stage, Plaintiff need not provide the Court with significant documentation supporting this theory. But Plaintiff would need to do more—either through affidavits or time sheets—to demonstrate that Defendant's edits to the time sheets were uniform or common enough that all members of the proposed class were similarly situated. The fact that

individuals were sometimes paid overtime, the fact that the proffered time sheets do not communicate a clear pattern or policy of overtime reduction, and the fact that affidavits from Plaintiff, Felan, and Candiani are vague all caution against a finding that the proposed class is similarly situated at this time.[3] Further discovery would be needed before the Court grants notice on this claim.

### C. Notice is Warranted

Having found Plaintiff establishes its proposed class is similarly situated with respect to at least one argument, the Court finds that notice is warranted to determine the lawfulness of this policy collectively. Plaintiff's proposed notification class reflects the similarly situated group of workers. *Compare with Garcia-Alvarez*, 2022 WL 2119542 (granting notice to a narrowed class even where finding parties may not be similarly situated with respect to one of Plaintiff's two claims); *Aboin v. IX Cash Inc.*, No. 4:20-CV-03188, 2021 WL 3616098, at *7 (S.D. Tex. June 29, 2021) (same).

## IV. FORM OF NOTICE

Plaintiff proposed an initial plan for the service of notice. Defendant objected to several components of this plan, including calls and texts. Defendant also proposed different language for the notice. Plaintiff accepted Defendant's proposed language and withdrew their request for calls. However, Plaintiff's proposed notice language focuses on overtime claims. The Court has not

---

[3] This is not to say that the Court could never grant notice based on a time shaving argument. While the amount of time shaved might differ amongst the putative class, the Court can determine the legality of Defendant's time-shaving actions communally. "Variations in the quantity of time lost as uncompensated goes to damages, not liability. When plaintiffs' common issues predominate over individual damage calculations, class certification is proper, and the plaintiffs may proceed in a collective action." *Segovia*, 2021 WL 2187956, at *9 (internal citation and quotations omitted). Whether managers and CSRs had a policy of changing records to avoid paying overtime or to otherwise improperly steal wages is a question that may easily determined collectively before considering whether and how this impacted each individual Plaintiff.

granted notice based on Plaintiff's overtime arguments. Rather, it has granted notice based on unpaid compensation related to the tip pool. Plaintiff must adjust her proposed language to reflect the reason for which notice was granted.

The only remaining area of contention between the two parties has to do with whether to authorize text messages. This Court—as well as others in this district—has previously found that text messages are appropriate. *Alvarez v. NES Glob. LLC*, No. 4:20-CV-1933, 2021 WL 3571223, at *5 (S.D. Tex. Aug. 11, 2021) ("The Court . . . concludes that the overall purpose of informing class members would be best served by the various methods of notice proposed by Plaintiff, including text messages."); *see also Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) (allowing text message notice on the basis that text messaging has become a dominant and sometimes primary means of communication in modern society, and in order to further the "overarching goal of providing potential class members the opportunity to join the case"); *Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 489–90 (S.D. Tex. 2020) ("While e-mail is engrained in the fabric of our world's communication structure, there is no denying that it has become saturated and unwieldy."). Accordingly, the Court grants Plaintiff's proposed notice process as described in their initial motion and as amended in their reply in support of this motion.

## V. CONCLUSION

The Court finds that Plaintiff has done enough to establish that her putative class is similarly established with respect to at least one of her allegations. The Court **GRANTS** Plaintiff's Motion to Authorize Notice through the procedure set out in Plaintiff's initial motion and modified in her Reply in Support of her Motion. The Court **DENIES** the specific language offered by

Plaintiff. Plaintiff has twenty (20) days to propose updated notice language eliminating reference to any overtime claims.

**IT IS SO ORDERED.**

Signed at Houston, Texas on December 19, 2022.

_____
Keith P. Ellison
United States District Judge